Case number 251370, Calvin Nolen versus Steven Ford. Argument not to exceed 15 minutes per side. Mr. Desi, you may proceed for the appellant. Good morning your honors. May it please the court, Michael Desi appearing on behalf of the appellant Calvin Nolen. Your honors, I did like to reserve five minutes for rebuttal. Your honors, we're here in the context of a dismissal on 12b6 for failing to state a claim, so I'd like to just jump right into what I believe are the cases that show that the plaintiff did state a valid cognizable claim under 1983. The facts in this case are very simple and straightforward, perhaps unlike the last case, but we have in this case an instance where the defendant is alleged to have committed misrepresentations or made false representations to a witness to induce that witness to identify the plaintiff for purposes of being the shooter in a murder case. So what we have is the district court said well you didn't state a claim because you can't state a claim for an unduly suggestive identification procedure for two reasons. The district court said first this witness did not see the crime live and so in the district court's opinion that rendered our claim to be non-cognizable and the second reason was the district court found that the witness in addition to not seeing it live, but also the district court found that the manner in which the identification took place does not fall within the case law because this happened at the witness's home. The witness was viewing a surveillance video and so for those reasons the district court said well that doesn't count and you can't state a claim for unduly suggestive identification procedures. The reason I believe that's incorrect and wrong is because we know that this court has said in the past in 2004 in the Beverly case the court did examine the contours of a right for an unduly suggestive identification claim and in that case they found that there was not an unduly suggestive claim in the case but still the court... Isn't that a problem for you though? If we set aside whether or not a claim was stated and jump ahead to whether or not it was clearly established, I don't think you can rely on Beverly to say that it's clearly established that a non-eyewitness viewing a video after the fact is going to be subject to an unduly suggestive photo, can you, or video. So let's jump to the clearly established prong since if that's what you're on or Judge Davis that that's what we're going to consider is whether the law was clearly established. I do think it was clearly established so if we look at the clearly established case law, we look at the Supreme Court case law, this is Hope, I'm talking about the Hope and the Pearson case, what's made clear is that there has to be fair warning that what the defendant does would constitute some violation. There has to be fair warning and also we have case law that says it can be based not only on published cases or unpublished cases from the circuit but it can also be just based on common sense. So what we know from the case law is that... What case says that it can be based on common sense? Well if it's maybe not common sense but if it's it's easily enough to recognize that what was done was wrong. It doesn't have to necessarily be on a case that mirrors the facts. So we know that an officer can't misrepresent to a witness in a photo lineup. You couldn't go to a photo lineup. If we were here in a photo lineup and an officer was saying, well look at that number, look at that number, what about that one, that person, we know that person was there, we know that person was there. So if you just take us out of the room from that photo lineup, there's no substantive distinction between that and doing it on the street or doing it at the police station if you're showing a witness a video and saying, well this this is your... I think this is your brother and his cell phone records say that he was there. So those were... Allegedly those are misrepresentations. So I just don't think that the... Substantive distinction though that the cases that you're talking about are eyewitnesses who presumably have no familiarity with the person who they're identifying. So they might rely more on an officer making suggestions about who this is or who this isn't. Whereas when you're talking about a is this your brother? I just don't see how that... How those factual scenarios are close enough such that we can rely on the cases that you're pointing to. So I understand, I appreciate your Honor's point. Beverly, the court did make the point of saying, well the traditional biggers factors can't really be applied in all instances. And I think this is one of those cases where you necessarily can't apply the biggers factors in particular because you do have a relationship, you have a witness who is... Well that's on reliability, but I just want to go back to suggestiveness. Just the first part of it. Just the suggestiveness. How is it... How are these things similar for purposes of suggestiveness? Well I think, personally I think that it's just as easy as saying you can't make false representations to a witness in any context. I don't think it matters. I don't think it should matter for purposes of the clearly established prong to say, well if an officer takes a witness to a different location and shows them a video, so maybe we should start with the video versus the fact that they're related. I don't think the fact that it was a video should make any substantive distinction because the witness still witnessed the crime in real time captured on a video. So I don't think the video aspect of it, Judge, I don't think that is dispositive and I don't think that should be a reason to undercut or undermine the validity of a duly suggestive claim. So that's that part of it. Now you get to the part of, well this is someone who's known to the defendant. This is an estranged sister, a family member. I still don't think it makes any substantive distinction that you just take this witness somewhere else and you make... you misrepresent certain facts after the witness said, no that's not my brother. I don't think that's my brother. He doesn't look like it's the right height and the officer allegedly says, well those countertops aren't the right height and they're not standard countertop sizes. So that might be throwing off your perception. So the officer clearly coaxed the witness into making the identification by making false statements and I just, I think that substantively is what controls. I don't think it controls where you do it or if it's at the police station and I think an officer would have fair warning if the standard is fair warning. We know the Supreme Court tells us in the Hope case that clearly established really boils down to fair warning. I just, I find it troubling that an officer could say, well I didn't have fair warning that I couldn't make false representations to a witness in this instance because I showed the witness a video and we weren't at a police station and it wasn't in a police lineup. That's just to me seems like a creative way to skirt the constitutional protections of the Due Process Clause which prohibits unduly suggestive identification claims. Maybe it is counsel, but I guess to go back to Judge Davis's original question if Beverly is your best case I think that's, you got a tough road ahead. Denial of a motion to suppress, I mean it found for the government in that case. I agree in that case, but what I think is important is that the court still analyzed those particular aspects of Beverly which are very close, they're analogous to our facts, when it considered whether the claim was unduly suggestive. So it was not, right? Well it was not reliable. In that case it was, but we have different facts where our witness was told things that were clearly misrepresentations and they were just false. Like the phone record saying, well the phone records put your brother at this scene when in fact the phone records did not. So I understand Beverly came out the other way, but I don't think that's really the dispositive question because it's still, the court still analyzed the situation of it. I would, I think your argument would be strong if we were analyzing from the perspective of, is a misrepresentation for police or from police, if that's what we're analyzing. But I think we're analyzing, was there a due process violation? And so that's where kind of this case law and the questions from Judges Ritz and Davis are directed at. You need something to show the representations led to a due process violation. Sure, and so Judge, I see your point, but I think that that works on a continuum where you say, well you first you have the misrepresentation by the police officer, but I think it then it segues into that misrepresentation equated to a violation of the Due Process Clause because based on those misrepresentations, the witness then made the identification, but only based on the alleged misrepresentations that were made by the officer. So I just see that it's on a continuum and I don't think we should just draw a line and say, well then it doesn't count at that point because it was done in a different context. You agree that to establish clearly established law, you would need to show law that would put the officer on notice. Not just that they couldn't commit a misrepresentation, but that they couldn't do so in a way that would be unduly suggestive and unreliable for purposes of the Due Process Clause. Sure, I don't disagree that you still have to show that the officer would have had fair warning that doing that would lead to an unduly suggestive claim, but I still don't see any substantive distinction. If an officer is lying to a witness, then it still seems to me if we're going to apply the fair warning, I don't, it seems counterintuitive to say, well a police officer wouldn't have fair warning that he should not engage in making false representations to a witness in order to coax them into making an identification. So I don't think that makes a distinction substantively. I understand the case law. Normally we look for cases that are as similar as we can find on the facts. Of course, apart from Beverly, we have this court's decision in Gregory versus City of Louisville. It's certainly not factually similar, but of course it recognizes unduly suggestive due process claims, and it does so in a way that suggests it's not as limited to certain instances. I see my time is up, so I'll save my time for rebuttal unless the court has any questions for me. All right, thank you. Good morning, Your Honors. It may please the court. Christopher Raiti on behalf of the defendant, or Stephen Ford. Your Honors, I'm just going to jump right into where the court left off. I think the court is spot-on. The Beverly case that plaintiff relies on was in a completely different context. Obviously then it could not clearly establish any type of constitutional rule putting any officer on fair warning. Beverly was a criminal case dealing with the admissibility of evidence. In no way did it impact qualified immunity or any other sort of constitutional issue. It simply said that the identification was admissible. I understood counsel to be relying on cases like I think it's Taylor from the Supreme Court from a few years ago where they said, well look, usually you need a sufficiently analogous factually on point case for purposes of the clearly established inquiry, but some violations are just so, I think in the court's word, egregious or obvious. And he's saying we're in that category of cases. What's your response? That knowingly lying to a witness in order to induce an identification is just the type of conduct that is so obviously unconstitutional that we don't need like an on-point factually case. Well, Your Honor, I think if that were accurate in this particular context, we would have had some case law somewhere along the line in some circuit or district that one of us could have cited. The best either of us could come up with in a factually analogous context was the Beverly case. All other cases where these types of unduly suggestive identification procedures are discussed are witnesses to the crime where the officer is talking to someone who saw the crime or was a victim to the crime. There just simply isn't any cases either side could cite in a factually analogous context. So to say that it would be the officers on fair warning flies in the face of cases like Brousseau v. Hagen where, you know, an officer certainly shooting somebody when it's unnecessary is an obvious or egregious type of, to use your word there, Your Honor. But in that case, unqualified immunity was granted because it wasn't clearly established that in that factual situation, a fleeing suspect where there might be danger and so on and so forth, that shooting them in the back was a violation of the Fourth Amendment. So here, similarly, while we can say that an officer shouldn't, as alleged here, misrepresent certain facts to the witness, there are no cases on it. And so to say that, you know, we know that officers can misrepresent certain facts when they're talking to suspects themselves, we know that. We know that officers can, you know, there's lots of gray areas, my point there. And so the point of the gray area or the point of qualified immunity is to protect that gray area. Furthermore, even if that was the case and this court were to say such a rule is clearly established, I know that in previous cases, the Gregory decision has been, some courts have taken issue with the Gregory decision. I believe it was described by some as being decided on shaky ground. The history of Gregory with regard to unduly suggestive identification procedures is questionable because the cases it relies on from the Supreme Court are in a, again, in a criminal context and not necessarily putting an officer on fair notice of a section 1983 litigation. And furthermore, something that hasn't been discussed, frankly, by either side is what's the remedy? And the remedy typically is the suppression of the evidence. And like in Vega v. Tico recently, the Supreme Court ruled that the violation of Miranda by itself, a prophylactic rule like Miranda, doesn't create a cause of action. Similarly, the unduly suggestive identifications are a prophylactic rule as well that bar the admission or judge whether the admission of that identification should go forward in the criminal trial. Well, doesn't Salter kind of cut against that? Didn't this court recently have an unduly suggestive case in a 1983 case that was similar to this from the perspective that was someone who was prosecuted and later was exonerated, or if not exonerated, at least the charges were dismissed after a substantial period in prison? Yes, Your Honor. And in that case, this particular issue regarding the impact of Vega v. Tico was not before the court. I believe it was Judge Nelbandian in his concurrence who expressly pointed out that he had wished that that was before the court so they could analyze whether or not the use of prophylactic rules like Miranda and the unduly suggestive identification rule, whether they actually do create a cause of action under Section 1983. I was just going to say you're right about that and that wasn't that concurrence, but because it wasn't before the court, the latest that we have spoken on it is that it is a cause of action that can be pursued pursuant to Section 1983, right? Your Honor, I don't have the exact language of Salter in front of me and I believe that you are of course correct that it could go forward. However, even in the Salter case, the context was different. It wasn't like we're speaking here where an officer asks of someone if they recognize somebody in a video. Ms. Kenyatta Jones-Hunt, who was the witness we're talking about here, she wasn't asked to testify that her brother committed the murder. She was shown a video and audio, by the way, and said does that resemble your brother? And even when the impact of the identification wasn't so clear, it wasn't the only thing the court based its decision on. There was a slew of other evidence that we cite in our brief. You know, the fact that Kelvin Nolan was the only one who did work at the store for the victim, that the suspect knew, obviously knew, the layout of the store because he was able to position himself where you couldn't see his face, whereas everybody else who came in you could see their face. There were two witnesses who testified that they came to that particular gas station at that time because they knew Kelvin Nolan would be there and they were going to buy some drugs from him. I guess I'm jumping to the Brady claim because are you describing the evidence at trial? That was at trial, yes. And my point, your honor, is that when we're analyzing the... How do we know that? We have one page, correct me if I'm wrong, we have one page from the trial transcripts. We have the preliminary hearing and the district court relied on that, I believe, and said this was evidence that was available for trial. I've, in analyzing the Brady claim, I think, correct me if I'm wrong on this, it's important to look at the evidence at trial. If there's no dispute that it was essentially the same evidence, that's one thing. Well, there hasn't been any dispute, your honor, and I apologize, I don't have all of my exhibits here with me. I can grab the book if we need to, but I trust your honor on this. Well, I guess what I'm asking is if I can trust you guys on this, what was actually introduced at trial? Yes, we did cite, I know there is some trial transcripts cited because we describe in the opening, Kelvin Nolan's attorney in his opening references the fact that that Ms. Jones-Hunt initially didn't identify. Most of this was apparent to the court and to the jurors and to the parties, quite frankly. So with regard to the clearly established prong, I think we've talked at quite, well, pretty far into it. There was a recent case that was unpublished by the Sixth Circuit, Smith v. Davis, where the court sort of took a survey of the types of cases that fall within this type of claim. All of them were in the context of showing a witness to the crime or a victim, a photo array, a single photo, or an improper lineup where the criminal defendant is put in front of the people. This makes sense. The source of this line of cases comes from the Sixth Amendment, from the right to counsel during one of these identification procedures, or the right to confront your witnesses. And in this case, those are the witnesses to the crime. Again, Ms. Jones-Hunt didn't actually witness the crime. The fact that she saw it, part of a video showing who she later identified as probably her brother, doesn't change that fact. Moving on, Your Honors, to the Brady claim, as Judge Ritz mentioned, the the only thing that's at issue with the Brady claim is the name Daryl Dobbs and that Ms. Jones-Hunt allegedly identified Mr. Dobbs as possibly the person in the video. In this case, the McNeil case is directly on point. There, the officer had interviewed a witness named Ryschynski. Ryschynski, initially in his reviewing the photo array, did not identify the criminal defendant. However, in the same interview, he later did identify it. That entire police report was suppressed, was not turned over. And even in that case, the court said that that was not a constitutional violation because the identification of, or the initial not-identification, if you will, or inability to identify, was not material. Because the other evidence, the trial, awaited. Yes, Your Honor. You can see why I'm asking these questions. Yes, yes. About what was at trial. Well, we have, Your Honor, that, I mean, it depends on each of these cases. It depends on what else was there, right? Yes, Your Honor. And all of these, all of the same things that were there, there's no dispute. Neither party has disputed what what was presented at trial, that what was presented at the at the preliminary exam was also presented at trial. And in this case, you know, not to repeat myself, but there was a, there was, as we point out, quite a bit of evidence that supported, rephrase that, weighed in the context of all the evidence that was permitted. Simply identifying the name Daryl Dobbs was not material. There was no reasonable probability that the jury's outcome would have changed. And is that, in your view, because Ms. Jones-Hunt was sufficiently impeached as to her... Well, not just that. That is certainly a great, a big part of it. You know, they were, like I said, Plaintiff's Counsel at the criminal matter certainly was aware that Ms. Jones-Hunt had trouble identifying the person in the video as her brother. And a lot of that came out in, during the heavy cross-examination, where she testified that, you know, she was not a hundred percent certain. She thought it kind of resembled him, and when she heard the voice it sounded like him, but she wasn't a hundred percent sure. She certainly backed off on that. And in addition... Can you emulate that, the evidence, with respect to the original identification, be more probative? If she had come in on the stand and said, one hundred percent I'm sure this was my brother on the video, would that be a different case, in your view, with respect to materiality? You know, I hadn't considered that, Your Honor. It certainly would change the, somewhat the analysis, because the facts would be different. It would change the analysis, because in such a case, even if we fit it within the construct of the unduly suggestive identification procedures, if she was that certain, then we could apply some of the bigger factors and look at the reliability of the identification, if she was that certain. If she was cross-examined and she waffled like she did in this case, that would certainly change some of the analysis going forward. But that's not what happened in this case, and we know that. She was far from certain on the stand, but we had a, like I said, considerable other evidence. And that same evidence, Your Honors, is what leads us to why there was at least arguable probable cause to prosecute this matter. As we know, what was alleged in this case, first of all, was that Officer Ford supplied false information and omitted material information. However, there's nothing in the complaint that identifies what those false statements allegedly were, or omitting material information to the court or to the prosecutor. That alone is fatal to plaintiff's claims. But even if it were not, the other evidence that we talked about here today certainly establishes the low bar of probable cause and the even lower bar for qualified immunity if there was at least arguable probable cause to prosecute this case. Your Honors, I see my time is just about up, unless the court has other questions. Defendant Ford respectfully requests that this honorable court affirm the lower bar of probable cause to prosecute this case in its entirety. Thank you. Counsel, I know you have some points that you want to make, but since you didn't get to speak on Brady and malicious prosecution before, you might want to start with the probable cause for the Brady. Yes, Your Honors. I think that's actually what I was going to do. Judge Ritz, your point, I think, is well taken in the sense that it's our position that the district court essentially engaged in impermissible weighing of the evidence on the Brady claim. And so your point about what was the evidence that was at trial and what would have been important, and even your point, Judge Hermendorfer, about the materiality, I think that we're delving deep now into the factual record and we're merely looking at this through the lens of a 12 v 6 dismissal as to whether plaintiff stated a claim. The district court found that we didn't state a claim on the Brady claim because of the materiality issue. And I think the materiality issue, I don't think, can be resolved in the context of a 12 v 6 motion for dismissal. So the other, my other... That's an interesting theory. I guess I'm not sure that was the point I was making. Oh, all right. Do you dispute that the evidence as listed by the district court was also introduced at trial? I don't dispute that, but I would say that that other evidence that the district court pointed to is entirely circumstantial evidence at best. And what you have that is compared to the evidence of the witness who, I wanted to say eyewitness, but I shouldn't say eyewitness because we know the witness saw the videotape, but you have the testimony of the witness who identified the plaintiff who made the identification from the video, right? So you have her testimony saying, yeah, I'm pretty sure I think it was my brother. So that's why I think the other circumstantial evidence simply does not rise to the same level. And again, I think at that point, we're getting way past the point of looking at a case through a 12 v 6 motion. And we're now looking at it, we're arguing what looks like a summary judgment proceeding based on the evidence and the competing inferences to be made from the evidence that was introduced at trial, including the circumstantial evidence. So you don't disagree that materiality on a Brady claim is a pure question of law. I agree. But again, since all of the evidence wasn't introduced in the context of the 12 v 6, we have only the few things that the district court picked out to say, well, there was this other evidence, circumstantial evidence. There certainly could be other things. I don't know that it's complete. I can't say that what the district court listed is a complete recitation of all the evidence. I don't think that it was. So that's why I'm troubled by the materiality finding by the district court, which looks like an impermissible weighing of the evidence, and it looks more like a summary judgment standard. So, and I also would like to address Brother Counsel's point about the McNeil case and where this court found that there wasn't a constitutional violation. But in McNeil, the witness didn't identify another different suspect. That's the distinguishing factor between McNeil and what we have here. In this instance, the witness, the Kenyatta Jones, she identified a different individual, Darrell Dobbs. That's what was omitted. So in McNeil, the witness said, well, I'm not sure. I'm not, I can't see the person's face well enough. And then they showed that witness other pictures and they said, yeah, okay, that's him or her. That's completely different than a witness saying, no, it's not my brother. It's this other individual named Darrell Dobbs, and then omitting that. So I don't, I disagree with Brother Counsel that the McNeil case provides any clear template or even authority to view that evidence in terms of materiality. You would agree that she was a pretty wounded witness, wouldn't you? I mean, her identification was pretty equivocal, especially considering the fact that it was her brother. Sure. A strange brother, a strange. They had been estranged for many years. So, but I don't disagree with you, Your Honor. But again, she identified somebody else. That's the part that, that was the issue that was suppressed. The detective never memorialized into writing that the witness identified somebody else. And that was something that was not known at trial to trial counsel at the time. So I think that distinction makes all the difference. I do want to circle back on the Vega case that we talked about. And Your Honor, Judge Davis, you made the point about Salter. Yes, Salter was decided last year, and I agree. Salter found that there was a claim stated for unduly suggestive identification. I don't think Vega changes that in the least. The other point is in Vega, the Supreme Court made clear that while Miranda is a prophylactic rule, a violation of Miranda in and of itself does not equal a constitutional violation, right? We know that. It doesn't, it doesn't automatically mean it's a constitutional violation. It could be. But what we have here is the violation of the constitutional right, which was the denial of a right to a fair trial, which is what Salter makes the point of mentioning. So if you have an unduly suggestive identification where you make these misrepresentations, and that witness then, that witness was coaxed into identifying the person, that would constitute the denial of a fair trial. And that makes the difference in why it's not simply prophylactic rule. I see my time is up. In case the court has any questions, I'm happy to answer. Thank you, Your Honors. Great. Counsel, thank you so much for your argument. The case will be submitted.